UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARREN B. DUNCAN,<br><br>      Plaintiff,<br><br>  v.<br><br>SACOR FINANCIAL, INC. and COLE SCHOTZ, P.C.,<br><br>      Defendants. | Civil Action No. 2:22-cv-02742-SDW-CLW<br><br>REPORT AND RECOMMENDATION |

**CATHY L. WALDOR, U.S.M.J.**

**I.   Introduction**

This matter is before the Court on the motion of plaintiff Warren B. Duncan ("Duncan") seeking to remand the case to New Jersey Superior Court (ECF No. 4). The motion is fully briefed and has been referred to the undersigned by the Honorable Susan D. Wigenton. The Court has carefully considered the parties' submissions and decides the matter without oral argument per FED. R. CIV. P. 78(b) and Local Civil Rule 78.1. For the reasons stated below, the Court respectfully recommends that Duncan's motion be **GRANTED.**

**II.   Background**

Duncan brought this putative class action in New Jersey Superior Court in April 2022. ECF No. 1, Ex. A (the "Complaint"). His allegations, assumed true for purposes of this motion, arise from a collection letter (the "Letter") sent to him by defendant Cole Schotz, P.C. on behalf of defendant Sacor Financial, Inc. (collectively, "Defendants") in connection with a credit card debt. The Letter, dated April 14, 2021, stated that Duncan owed Sacor a balance of $13,890.18 on March 16, 2021. *See generally* Complaint at ¶¶ 9-17.

Duncan alleges the Letter violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692, *et seq.*, in two respects. First is that the Letter "stated *an* amount of the Debt as of March 1[6], 2021—29 days before the date of the Letter—and did not provide Plaintiff with the amount of the debt as of the date of the letter with *per diem* interest or the amount due at future date." According to Duncan, this violates 15 U.S.C. § 1692g(a)(1), which requires collection letters to state "the amount of the debt", and constitutes a false representation of the amount owed in violation of 15 U.S.C. § 1692e(2)(A). *See id.* at ¶¶ 23-24. Second, because the Letter stated that disputes as to the validity of the debt must be in writing — a condition not required by the FDCPA — the letter failed to appropriately apprise Duncan of his dispute rights under 15 U.S.C. § 1692g(a)(3). *See id.* at ¶¶ 25-27.

Defendants timely removed the action to this Court on the ground that "the sole relief sought by Plaintiff is sought pursuant to 15 U.S.C. § 1692. Therefore, this matter may be removed [to] this Court by defendants pursuant to 28 U.S.C. § 1441, because all relief sought by Plaintiff is governed exclusively by a federal statute." ECF No. 1 at ¶ 9 (citing, *e.g.*, 28 U.S.C. § 1331).

**III.   Legal Standards**

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Importantly, "[t]he removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), *cert. dismissed sub. nom. American Standard v. Steel Valley Auth.*, 484 U.S. 1021 (1988)).

Article III of the U.S. Constitution limits federal court jurisdiction to resolution of "'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982). This "includes the requirement that litigants have standing." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021); *see, e.g.*, *Schaller v. United States SSA*, 844 F. App'x 566, 570 (3d Cir. 2021) ("The Supreme Court has repeatedly described the question of Article III standing as a 'threshold' issue . . . .") (quoting *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 573-74 (3d Cir. 2020)). Standing entails three elements: "[(1)] an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing cases). As is the case with subject matter jurisdiction generally, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citing cases); *see, e.g.*, *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) ("A party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the federal court.'") (quoting *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007); citing *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006)).

## IV.    Analysis

The Court begins by briefly addressing Defendants' arguments as to the question of which party must demonstrate federal jurisdiction (and in turn, standing). First and as noted above — and notwithstanding Defendants' vehement contentions to the contrary — the case law is clear that, as the removing parties, it is on Defendants' shoulders that this burden falls. *See Lujan*, *Judon*, *supra*.

Defendants' more specific burden arguments also fail. They assert that "Plaintiff mischaracterizes a litany of cases for the false premise that the Defendants somehow bear the burden of proving Plaintiff has in fact **suffered** – as opposed to **alleged** – a 'concrete … injury in fact' under a federal statute in order for this Court to have subject matter jurisdiction over this action." ECF No. 7 at 8. But the thrust of Duncan's position (as well as his cited authority) is not that Defendants must prove an injury in fact at the present pleading stage to establish standing; only that such injury must be alleged — something that, as discussed below, the Complaint does not do. *Cf. Lujan*, 504 U.S. at 561 ("[E]ach [standing] element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i. e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . .") (citation omitted).

Defendants also take issue with the procedural postures of some of Plaintiffs' cited cases. *See* ECF No. 7 at 9 ("*Lujan* had nothing to do with a removing party's right to remove an action to federal court based on federal question jurisdiction . . . . *Collins* [*v. Yellen*, 141 S. Ct. 1761, 1779 (2021)] did not deal with a defendant's burden of proof to remove an action."). This argument fails in light of 28 U.S.C. § 1447(c)'s mandate (stated above) that "[i]f at any time

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Because of this sweeping and enduring "responsibility to assure [itself] that subject matter jurisdiction exists", *Sangmeister v. Airborne Express*, 2001 U.S. Dist. LEXIS 13466, at *9 (E.D. Pa. Aug. 30, 2001) the Court may safely extrapolate from matters discussing standing in other contexts (such as motions to dismiss or for summary judgment), regardless of variances in procedural posture. *Cf. Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014) ("A plaintiff who contests the existence of removal jurisdiction may file a motion to remand [under] 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).").

Turning, then, to the question of whether Defendants have met their burden to demonstrate standing, the parties' arguments center on the aforementioned "injury in fact" requirement. Such injury consists of three components: "First, the party must show that he or she suffered an invasion of a legally protected interest. Second, the party must show that the injury is both concrete and particularized. Finally, the party must show that his or her injury is actual or imminent, not conjectural or hypothetical*." In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 284 (3d Cir. 2018) (citations and quotation marks omitted).

Duncan forwards a somewhat unusual argument in support of his remand request: that he suffered no injury in fact (specifically, that his claimed harms are not sufficiently "concrete" to constitute such injury) and therefore his Complaint does not allege Article III standing, thus requiring that the matter be remanded.

Although counterintuitive, Duncan's argument has merit, largely in view of a recent Supreme Court decision, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2202, 210 L. Ed. 2d 568

(2021). As aptly summarized by the Honorable Michael A. Shipp in *Rohl v. Prof'l Fin. Co.*, 2022 U.S. Dist. LEXIS 96934 (D.N.J. May 31, 2022), *TransUnion* held that an injury in fact requires allegations of an injury that bears

> a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." . . . The [*TransUnion*] Court further limited concrete injuries to something more than mere statutory violations[, writing that] Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is". In short, "an injury in law is not an injury in fact."

*Id.* at *6 (cleaned up; discussing *TransUnion*, 141 S. Ct. at 2204-05). As *TransUnion* concluded, "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" 141 S. Ct. at 2214 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F. 3d 990, 1004 (11th Cir. 2020)).

Judge Shipp in *Rohl* relied on *TransUnion* to find, *sua sponte*, that the court lacked subject matter jurisdiction (for lack of standing) over FDCPA claims similar to those here, writing that

> Rohl alleges nothing more than an "informational harm" because PFC attempted to deceive her. . . . Rohl alleges no additional harm because of PFC sending the Collection Letter. For example, the Complaint does not allege that Rohl's credit was harmed, that she lost any opportunities because of the debt, or even that she suffered emotional damages. Nor can the Court identify any other injury that would confer standing on Rohl.

*Id.* at *11-12 (citation omitted). Judge Shipp concluded that the plaintiff did "not allege an injury beyond statutory violations, which the Supreme Court has made clear is not enough to confer standing. . . . As such, Rohl lacks standing to bring this action." *Id.* at 12-13 (citation omitted).

Like the plaintiff in *Rohl*, Duncan "ha[s] identified no 'downstream consequences' from failing to receive the required information" which would transform Defendants' alleged statutory

violations into a concrete injury in fact. *See TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell*, 964 F. 3d at 1104). The extent of Defendants' alleged misdeeds is that they violated the FDCPA by failing to provide Duncan with accurate and complete information relating to his debt; nowhere, however, does Duncan allege that such violations actually harmed him. *See generally* Complaint; *see, e.g., id.* at ¶ 24 ("[T]he Letter failed to provide Plaintiff with the notice required under 15 U.S.C. § 1692g(a)(1) but, instead, falsely represented the amount of the debt in violation of 15 U.S.C. § 1692e(2)(A)."); ¶ 27 ("the Letter failed to provide Plaintiff with the notice required under 15 U.S.C. § 1692g(a)(3)."). These are textbook "statutory violations, which the Supreme Court has made clear [are] not enough to confer standing." *Rohl*, *supra*.

As Judge Shipp more recently observed, "[s]ince the . . . decision in *Rohl*, wind beneath the no-standing sails in FDCPA cases has picked up significantly across the federal judiciary." *Daye v. GC Servs. Ltd. P'ship*, 2022 U.S. Dist. LEXIS 172417, at *6 n.2 (D.N.J. Sep. 23, 2022). This district's case law is illustrative — and, upon review, appears nearly unanimous: with one exception, the Court is not aware of a single post-*TransUnion* FDCPA case from New Jersey federal courts to have considered the present question and resolved it in favor of Article III standing.[1] Meanwhile, approximately a dozen such cases have concluded that *TransUnion* forecloses any finding of an injury in fact under circumstances like those here. See*, e.g.*, *Daye*, 2022 U.S. Dist. LEXIS 172417, at *9-11 (noting that "without 'downstream consequences' or 'adverse effects' from the statutory harm, alleging pure statutory violations . . . does not confer

---

[1] The exception is *Ozturk v. Amsher Collection Servs.*, 2022 U.S. Dist. LEXIS 91078 (D.N.J. May 20, 2022), which relied exclusively on pre-*TransUnion* authority in writing that "courts in this district examining section 1692e 'favor[] finding concrete injury under the FDCPA where violations of the statute have been alleged.'" *Id.* at *9 (quoting *Napolitano v. Ragan & Ragan*, 2017 U.S. Dist. LEXIS 131335, at *15 (D.N.J. Aug. 17, 2017)). Such authority is significantly undercut — if not altogether abrogated— by *TransUnion*, which, it bears mention, was referenced in *Ozturk* only in passing.

standing" and remanding case because "Daye needs to allege some form of concrete injury that accompanies the statutory violation; some consequence that stemmed from Daye's reliance on the Letter; some adverse occurrence that arose from the Letter; or some parallel harm caused by a third party receiving the Letter. Here, Daye fails to allege any of these events.") (citation omitted); *Sandoval v. Midland Funding, LLC*, 2022 U.S. Dist. LEXIS 158150, at *2-4 (D.N.J. Sep. 1, 2022) (**Wigenton, J.**) (where complaint alleged only "invasion of Plaintiffs' substantive rights protected by the FDCPA", Court held that under *TransUnion*, "Plaintiffs suffered no concrete harm sufficient to confer Article III standing. Thus, the Court lacked subject-matter jurisdiction to address the merits of Plaintiffs' Complaint" and dismissed case); *Foley v. Medicredit, Inc.*, 2022 U.S. Dist. LEXIS 135422, at *11-12 (D.N.J. July 29, 2022) (remanding FDCPA case where "Foley fails to allege that she was harmed by any action (or inaction) she took as a result of the Collection Letter. Allegations such as these are insufficient when they fail to allege an injury in fact, as opposed to simply an injury in law *i.e.* that a defendant simply violated a congressionally implemented statute. Nor can the Court identify any other injury that would confer standing on Foley. The Court therefore finds that Foley does not allege an injury beyond statutory violations, which the Supreme Court [in *TransUnion*] made clear is not enough to confer standing.") (citation omitted); *Vaughan v. Fein, Such, Kahn & Shepard, P.C.*, 2022 U.S. Dist. LEXIS 112024, at *14-15 (D.N.J. June 24, 2022) (rejecting various standing arguments, concluding that "Plaintiff's harms constitute neither intangible nor tangible harms that satisfy the requisite concreteness standard", and dismissing case); *see also Madlinger v. Enhanced Recovery Co., LLC*, 2022 U.S. Dist. LEXIS 109328, at *13-14 (D.N.J. June 21, 2022) (collecting circuit court cases that have "squarely rejected general allegations of confusion,

8

alone, as insufficient to confer standing").[2] Although the Court is not bound by these district court decisions, it is compelled by their uniformity in holding that an FDCPA plaintiff who does not allege a tangible downstream injury as a result of a misleading collection letter lacks Article III standing.[3]

Ultimately, Duncan "is the master of his complaint and likewise, controls his own theories of standing" *vel non*. *Van Vleck v. Leikin, Ingber & Winters, P.C.*, 2021 U.S. Dist. LEXIS 62129, at *11 (E.D. Mich. Mar. 31, 2021); *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."). By refraining from alleging a concrete injury in fact, Duncan has precluded the prospect of a federal forum deciding his claims. *See, e.g.*, *Thornley v. Clearview AI, Inc.*, 2020 U.S. Dist. LEXIS 197519, at *5-6 (N.D. Ill. Oct. 23, 2020) (remanding case after observing that "a plaintiff is the master of her own complaint. Plaintiffs purposely narrowed their claim . . . and filed their lawsuit in state court where such actions are allowed without the constraints of Article III standing. In the end,

---

[2] By way of illustrative contrast, a recent FDCPA case from the District of Pennsylvania, *Huber v. Simon's Agency Inc.*, 2022 U.S. Dist. LEXIS 98385 (E.D. Pa. June 2, 2022), found Article III standing where the plaintiff "was not merely confused or anxious; she was also unable to undertake reasonable action with the benefit of accurate information because of SAI's misleading collection letter. As a result, Huber suffered financial consequences." *Id.* at *9 (citation omitted).

[3] One might wonder what Duncan's end game is, being that he has brought a complaint that, by his own representation, fails to allege a concrete injury. In this respect (and without comment on the substantive merits of Duncan's claims), the Court notes that "Article III does not apply to the states, so 'state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability.'" *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) (quoting *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617 (1989)). To this end, "New Jersey cases have historically taken a much more liberal approach on the issue of standing than have the federal cases. Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of [state courts'] judicial power to actual cases and controversies." *People For Open Gov't v. Roberts*, 397 N.J. Super. 502, 509 (Super. Ct. App. Div. 2008) (quoting *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 N.J. 98, 275 A.2d 433 (1971); cleaned up).

plaintiffs did not allege an injury-in-fact, and thus [the removing defendant] has failed to establish Article III standing.") (citation omitted). The Court will accordingly recommend that the case be remanded.[4]

**V.      Conclusion**

For the reasons stated, it is

**RESPECTFULLY RECOMMENDED** that plaintiff Warren B. Duncan's motion to remand (ECF No. 4) be **GRANTED**; and it is further

**RESPECTFULLY RECOMMENDED** that this case be remanded for all further proceedings to the Superior Court of New Jersey, Law Division, Sussex County; and it is further

**RESPECTFULLY RECOMMENDED** that the Clerk of the Court be directed to terminate this matter.

The parties have fourteen (14) days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and L. Civ. R. 72.1(c)(2).

Dated: October 19, 2022

*/s/ Cathy L. Waldor*
Cathy L. Waldor, U.S.M.J.

---

[4] "[C]ourts . . . have consistently found that, where a defendant removes a case from state court based on a federal question, but Article III standing is lacking, the proper recourse is to remand the case, rather than to dismiss the action." *Katz v. Six Flags Great Adventure, LLC*, 2018 U.S. Dist. LEXIS 135913, at *25-26 (D.N.J. Aug. 13, 2018) (collecting cases).